FILED

2008 Mar-31  PM 05:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| **BRADLEY R. GADDISON** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **4:07-cv-1492-UWC** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act,

42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of

the Social Security Administration ("SSA").  This Court finds the Administrative Law

Judge's ("ALJ") decision, which has become the decision of the Commissioner, is not

supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court

will **REVERSE** the decision denying benefits.

### I.  Procedural History

Plaintiff filed an application for disability insurance benefits in March 2005.  (R.

34.)  This application was denied administratively at the initial and reconsideration stages.

Plaintiff requested a hearing before an ALJ, which was held on November 27, 2006, in

1

Gadsden, Alabama.  (R. 34.)  On February 20, 2007, the ALJ denied the claim. (R. 43.)

When considering the Plaintiffs' request for review, the Appeals Council considered

some  additional evidence offered by Plaintiff.  (R. 2A.)  However, the records from the

Appeals Council do not indicate that it considered a consultive Physiological Examination

performed by psychologist Dr. David Wilson.  (*See* Doc. 10, Pl.'s Motion to Remand.)

Ultimately, the Appeals Council refused to grant review on August 2, 2007. (R. 3.)

Having timely pursued and exhausted his administrative remedies, Plaintiff filed an action

for judicial review in Federal District Court pursuant to section 1631 of the Social

Security Act, 42 U.S.C. § 1383(c)(3).

## II.  Factual Background

At the time of the hearing, Plaintiff was a thirty-two year-old man, who has past

relevant work experience as a fast food worker, a laborer and dishwasher.  (R. 305, 92.)

There is no evidence that Plaintiff has engaged in substantial gainful activity during the

relevant time period.  (R. 34.)  He suffers from borderline intellectual functioning, as well

as pain in his back, hands, knees, ankles and feet.

The record indicates that Plaintiff attended school until tenth grade.  His grades

indicate scores ranging from as high as 95 for physical education to as low as 51 for basic

Alegebra.  (R. 82.)  Both Plaintiff and his mother testified that he attended special

education classes.

On January 25, 1996, Plaintiff was treated at Kirklin Clinic by Dr. Jason Dyken

after complaining of swelling feet and ankles dating back several months.  Additionally, he complained of persistent back, wrist, ankle and left knee pain that began back in November.  Upon examination, he had tenderness to palpitation in the thoracic spine and lumbosacral spine.  He also had decreased range of motion secondary to tenderness predominately in the right second and third metacarpal joint, left first metacarpal joint, left knee, right medial malleolus, as well as the left first, second and third metatarsal joints.  Additionally, these joints had fluid in them and were actively inflamed.  Dr. Dyken attempted to remove the fluid from Plaintiff's knee twice, but the procedures were unsuccessful.  Dr. Dyken ordered testing and prescribed anti-inflammatory medication. X-rays taken of Plaintiff's back, left hand, left knee and feet revealed nothing significant. (R. 105-10.)  Plaintiff's rheumatoid arthritis and autoimmune blood tests were negative. (R. 104.)

At his follow-up visit on February 8, Plaintiff continued to complain of persistent joint pain and stiffness.  He had some adequte relief from medications, but he was unable to return to normal activites.  (R. 104.)   Dr. Dyken noted Plaintiff's extermeties were unchanged from the last examination, but Plaintiff was in no acute distress.  Dr. Dyken referred Plaintiff to rheumatology.

University of Alabama ("UAB") Rheumatologist Dr. Robert Gay, Jr. examined Plaintiff the following week.  Plaintiff continued to complain of pain and swelling. Although Plaintiff's back x-ray was normal, his examination was notable for synovitis

3

(inflamation) in the second and third right metacarphophangeals.  Plaintiff had full range of motion in his spine and shoulders.  However, he was tender over the right sacroiliac joint, with minimal tenderness in the lumbar paraspinous muscles.  His ankle revealed "+2 swelling with warmth," as well as swelling in his first left metatarsophalangeal and tenderness of the fourth left metatarsophalangeal.  (R. 120.)  Dr. Gay concluded that Plaintiff might have reactive arthritis, but more likely had early seronegative rheumatoid arthritis.  Plaintiff was continued on an anti-inflammatory medications and Plaquenil, which is used to treat inflammation.  (R. 118,121.)

On a follow-up visit approximately ten days later, Plaintiff reported blurred vision as a result of using Plaquenil.  He continued to complain of pain in both toes, in the area of the right buttock.  He had full range of motion in his elbows, shoulders, hips and knees. The swelling in his hands continued, but improved, and he had mild swelling in his right ankle and his toes.  Additionally, he had tenderness in his fingers.  (R. 118.)  Dr. Gay opined, "I am unable to differentiate whether this is seronegative rheumatoid arthritis or possibly seronegaitve spondyloarthropathy." (*Id*.)  He ordered new x-rays and an Human Leukocyte Antigen B (HLAB-27) profile.[1]

When Plaintiff returned to Dr. Dyken in March, 1996, he reported some adequate relief in joint pains, but he otherwise noted no overall improvement in his symptoms.  (R.

---

[1] There is a relationship between HLAB-27 and reactive arthritis, as well as a connection to ankylosing spondylitis, which is a chronic painful, degenerative inflammatory arthritis primarily affecting the spine.  Other HLAB tests are likewise related to arthritis.

103.)

In 1998, Plaintiff was treated in the emergency room where he complained of foot and ankle pain.  (R. 38.)  He had swelling and tenderness in his feet/ankles.  (R. 234.) The emergency room physicians prescribed Motrin and Lortab.  (R. 239.)

In June 2000, Plaintiff underwent a psychological examination to determine whether he should have custody of his children.  Apparently, the children were taken away from Plaintiff and the mother and both were attempting to regain custody.  (R. 192.) Dr. Willis C. Estis, Ed. D, a Licensed professional Counselor, allowed Plaintiff to listen to the testing items on tape because of Plaintiff's limited reading ability.  (R. 195.)  Dr. Estis determined that Plaintiff had only fair reasoning and judgment.  (R. 194.)  He also had long term memory problems.  However, he appeared motivated and Dr. Estis determined that his IQ tests scores were valid: Verbal 70, Performance 84, and full scale 75.  (R. 195.)   Dr. Estis also noted that all subtest scores on the verbal and performance sections fell below the mean score of ten.  (R. 195.)  He further noted that Plaintiff had borderline intellectual functioning.  Additionally, she noted that he had difficulty maintaining close interpersonal relationships over a long period.  "Standardized personality testing [wa]s indicative of significant psychopathology to include paranoid traits as well as thinking processes that [are] considered unconventional, unusual and possibly bizarre."  (R. 196.)  "He is inclined to feel alienated and misunderstood . . . ." (R. 196.)  Moreover, he has "conflicts with societal limits, especially those he views as

5

authority figures is quite likely."  (R. 196.)

He was treated again in the emergency room in 2003 complaining of intermittent episodes of moderate hip, leg and knee pain that were exacerbated by walking.  (R. 155-56.)

In July 2005, Plaintiff submitted to a consultative physical examination conducted by Dr. J. N. Roberts.  (R. 157.)  Dr. Roberts observed that Plaintiff had good range of motion in all extremities, without pain, edema, arthritic deformity, or crepitus, except for both writst, hands/fingers and left knee.  Range of motion in the wrist was limited in both dorsiflexion and palmarflexion to 50 degrees, with moderate pain and endema.  (R. 158.)  Both hands had mild edema and arthritic deformity of the 1st and 2nd joints.  Plaintiff's left knee had moderately severe arthritic deformity and edema, but with normal range of motion.  (R. 158.)  Plaintiff could stoop, squat and bend with moderate difficulty, but he was unable to perform the heel/toe walk.  (*Id*.)  Dr. Roberts did not give an opinion regarding Plaintiff's functional abilities.

Later that month, on July 20, 2005, Dr. Mary Arnold performed another psychological examination of Plaintiff.  In her report, she noted that Plaintiff had been given an oral examination for his state driving test.  (R. 161.)  On his IQ test he scored verbal 75, performance 74 and full scale 72.  Although she described his effort as marginal, Dr. Arnold considered the test results valid and noted his scores indicate borderline functioning.  (R. 163.)  She gave him a GAF of 58.  (R. 164.)

6

During the administrative hearing, the Plaintiff testified that he had problems following instructions and he was unable to consistently hold down a job because his supervisors would become frustrated with repeatedly re-teaching him the duties of his job. (R. 320.)

After the administrative hearing, the ALJ noted that Plaintiff had not sought treatment between his 1996 visits to Dr. Gay at UAB and his 2003 emergency room visit. The ALJ also noted that consulting physician Dr. Roberts reported mild endema, moderate pain, some normal range of motion and some mild and moderate range of motion, as well as mild to moderate tenderness.

The ALJ also concluded that Plaintiff's ability to take and complete several IQ tests indicated some ability to read, write and perform basic mental tasks.  The ALJ also noted Plaintiff's ability to "initiate legal action" to regain custody of his children, drive an automobile and performed normal household chores as evidence of his ability to engage in work-relate activities.  According to the ALJ, Plaintiff had the ability to perform unskilled non-complex tasks, in other words light work.  (R. 40.)

After the ALJ's February 2007 decision, Plaintiff submitted to the Appeals Council several items containing additional evidence including the results of a July 12, 2007, consultative physical examination performed by Dr. Daniel S. Prince, a rheumatologist, that reviewed Plaintiff's past medical records.  (R. 302-3.)  Dr. Prince noted that Plaintiff's tests showed he was positive for HLA-B27, HLA-B7 and HLA-A3.

"This confirmed that the gentleman had seronegative spondyloarthrititis."  (R. 303.)
Plaintiff reported he had not returned to Dr. Gay at UAB, the physician who ordered the
testing, because of financial limitations.

Upon examination, Dr. Prince noted that Plaintiff had reduced range of motion in
the cervical spine with crepitus (cracking) and some tenderness.  (R. 304.)  The lumbar
mobility was reduced to forward and lateral flexion by at least 30%.  He also had crepitus,
tenderness and some restriction in mobility.  The elbows had slight puffiness and
tenderness.  He had crepitus and synovitis in the knee.  His feet, ankles and toes revealed
some puffiness of the ankles and some asymmetrical swelling of the toes.

Dr. Prince opined that, during an eight hour day, Plaintiff could sit 25-30 minutes,
stand 15-20 minutes and walk maybe up to 30 minutes at a time.  However, he could sit a
total of three hours and stand or walk only one hour.  (R. 305-6.)  Additionally, Dr. Prince
noted Plaintiff can never lift more than twenty-five pounds and he can never carry more
than 20 pounds.  Occasionally, he can use his upper extremities and his lower extremities
for action, but he cannot climb.  He can occasionally do simply grasping, fine
manipulation, and fingering of his hands.  (*Id*.)

A final psychological examination report was also submitted to the Appeals
Council.  However, the official record from the SSA does not contain a copy of this July
23, 2007, report by Dr. David R. Wilson.  (*See* Doc. 10.)  This third set of IQ tests yielded
the following results: verbal 70, performance 84 and full scale 75.  In addition to the IQ

8

test, Dr. Wilson administered the Wechsler Individual Achievement Test (WAIT).  This test showed Plaintiff maintained the equivalent fourth grade math reasoning skills and the equivalent of third grade reading skills.  His GAF was 50.

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits.  *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978).  The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Additionally, the Court must determine whether proper legal standards were applied.  *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance.  It is such evidence a reasonable mind would accept as adequate to support a conclusion.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  In contrast, the Commissioner's legal conclusions are more closely scrutinized.  "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius v. Sullivan*, 969 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability

claims.  20 C.F.R. § 404.1520 (1983).  The first consideration is whether the claimant is

working.  If the claimant is working, she is not disabled.  If the claimant is not working,

the Commissioner must determine whether the claimant suffers from a severe

impairment.  If the claimant does not suffer from a severe impairment, she is not disabled.

If the claimant suffers from a severe impairment, then the Commissioner must consider

whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1

("Listing"), which details "impairments which are considered severe enough to prevent a

person from doing any gainful activity."  20 C.F.R. § 404.1520(a).  *See Edwards v.*

*Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).  If the claimant's medical profile meets

the criteria for an impairment in the "Listing," then the claimant is disabled by law and no

further inquiry is necessary.

The burden is on the claimant to show that she meets the criteria under the listing.

To meet the listing, the claimant must be (1) diagnosed with a condition that is listed or

its equivalent, and (2) provide objective medical reports documenting that this condition

meets the specific criteria of the applicable listing and duration requirement.  *See*

*Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

When a claimant's "severe" impairment does not fall within a Listing, but

nonetheless restricts her ability to perform basic work activities, the ALJ must then assess

the claimant's residual functional capacity and the range of work activities that the

claimant could perform despite his impairments.  This evaluation must give consideration

to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

Pain alone can be disabling.  When a claimant claims disability based solely on pain, a three-part standard is utilized in assessing the credibility of his testimony.  The claimant must establish evidence of an underlying impairment <u>and</u> either: (1) objective medical evidence to confirm the severity of pain alleged, or (2) a finding that the impairment is of such a severity that it can be reasonably expected to cause the pain alleged.  *See, e.g.*, *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (emphasis added).

## IV.  Analysis

This Court must reverse the Commissioner's decision because the SSA ignored substantial evidence.  First, Plaintiff's treating rheumatologist Dr. Gay, noted

11

inflammation and tenderness upon examination of Plaintiff.  He subsequently placed Plaintiff on Plaquenil, which is used to treat inflammation.  However, Plaintiff did not tolerate the medication.  After the second examination, Dr. Gay ordered an HLAB profile.  He then opined that he was unsure whether Plaintiff suffered from seronegative rheumatoid arthritis or seronegaitve spondyloarthropathy.  However, when he made this notation he did not yet have the benefit of the HLAB profile from which to reach a conclusion about Plaintiff's condition.  Ultimately, Plaintiff lacked the financial resources to follow up with Dr. Gay.

Dr. Prince, also a rheumatologist examined the records of Dr. Gay, as well as the HLAB results and determined that Plaintiff suffers from seronegative spondyloarthritis.  Nothing in the record contradicts this finding.  There is nothing in the record that indicates Dr. Roberts, the consulting physician upon which the SSA relies, was a rheumatologist and/or that he considered the results of Plaintiff's HLAB results.  Moreover, based upon the records and a physical examination, rheumatolgost Dr. Gay opined that Plaintiff has severely limited abilities to sit, stand and walk during a work day.  There is no evidence from any specialists that contradicts the opinions of Dr. Gay.  The SSA ignored this substantial evidence.

Moreover, the SSA ignored substantial evidence regarding Plaintiff's limited mental functioning.  There is nothing in the record to contradict Plaintiff's evidence that he is a slow learner and he had difficulty maintaining a job because his supervisors tired

12

of repeatedly re-instructing him on how to perform his job duties.  Likewise, there is nothing in the record to contradict the standardize personality tests performed by Dr. Estis, which revealed that Plaintiff suffered from significant psychopathology, including paranoid traits.  Moreover, he is inclined to feel alienated and he conflicts with societal limits.  This evidence was ignored when the SSA concluded that Plaintiff's ability to pursue custody of his children, drive and perform household chores were indicative of his ability to work.

Finally, although Plaintiff had IQ scores ranging from 70 to 85, the Court notes that on two out of the tests, he had a low score of 70.  This is particularly significant because on one of those occasions he was attempting to regain custody of his children; thus, he had an incentive to perform as well as possible.

Because the SSA ignored the evidence of Plaintiff's limited mental functioning, along with the above-cited evidence regarding Plaintiff's functional limitations, the SSA's decision must be reversed.

Therefore, by separate order, the decision denying benefits will be reversed and remanded for further proceedings.

DONE this 31st day of March, 2008.


_____
U.W. Clemon
United States District Judge

13